Order Filed on August 2, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| In Re: | Case No.: | 24-11036 |
|---|---|---|
| **ERIC G. MADSEN,** | Chapter: | 7 |
| | Judge: | John K. Sherwood |
| Debtor. | Hearing Date: | May 28, 2024 |

### DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)

The relief set forth on the following pages, numbered two through nine, is hereby **ORDERED.**

DATED: August 2, 2024

Honorable John K. Sherwood
United States Bankruptcy Court

| | |
|---|---|
| Debtor: | Eric Madsen |
| Case No.: | 24-11036 |
| Caption of Order: | **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)** |

# INTRODUCTION

Alexander Oldja ("Mr. Oldja") has moved for dismissal of this Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 707(a) or, alternatively, to convert the case to Chapter 13. [ECF No. 7]. Mr. Oldja is the former landlord of Eric G. Madsen (the "Debtor") and holds a default judgment against him in the amount of $38,261. Mr. Oldja claims that the Debtor acted in bad faith by misrepresenting his ability to pay his debts in his petition and schedules. He also argues that because his judgment claim is by far the Debtor's largest liability, this case is essentially a two-party dispute, and the Debtor is manipulating the judicial process to achieve a result that would be fundamentally unfair - using this bankruptcy case as a litigation strategy to avoid paying the judgment. The Debtor contends that he seeks bankruptcy relief because he has been financially overwhelmed by substantial legal bills and other payments to professionals in connection with a custody dispute with his former wife that is pending in State Court and is expected to continue indefinitely. The Debtor claims that these substantial litigation costs make it impossible for him to pay Mr. Oldja's claim.

The Court has considered the pleadings filed by the parties, the arguments of counsel and the testimony of the Debtor on May 28, 2024. [ECF No. 19]. For the reasons set forth below, the Court will deny Mr. Oldja's motion to dismiss the case pursuant to § 707(a).

# JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, as amended September 18, 2012. This matter is a core proceeding

Debtor:        Eric Madsen
Case No.:      24-11036
Caption of Order: **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)**

pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FACTUAL BACKGROUND

The Debtor is a utility worker residing in Totowa, New Jersey with his current wife who works as a hairdresser. His previous marriage resulted in divorce and a custody dispute over the Debtor's 10-year-old child. As part of the dispute, the Debtor claims that he must pay ongoing legal fees of more than $20,000, $7,000 for a parental mediator, and $600 per month for his son's therapy sessions. In the Debtor's Schedule J, he estimates that these expenses will average about $2,600 per month. [ECF No. 1, p. 30]. The Debtor and his wife also make mortgage payments on a residential property that the Debtor does not own in the amount of $3,158. The record is not clear, but the property is owned by the Debtor's mother and/or his wife. There is no allegation that the Debtor ever owned the home and transferred his interest in it to thwart his creditors. The Debtor has a vehicle in his mother's name, a Ford F-150 which he uses and pays for ($500 monthly payment), and his wife leases and pays for an Acura MDX ($700 monthly payment). The Schedules reflect that the total take home pay for the Debtor and his current wife is $10,378 and that their monthly expenses are $11,892, for a monthly net loss of ($1,514).

The Debtor was unemployed for 11 months during the COVID pandemic. During this time, he raised money through an initiative called "The Front Porch Project." Through this endeavor, the Debtor solicited donations through his social media platforms, which funded the purchase of meals for first responders. The Debtor testified that he raised approximately $7,000 from this project and that all the funds were used to pay for meals. [ECF No. 19, p. 23]. Mr. Oldja, who had

Case 24-11036-JKS    Doc 22    Filed 08/02/24    Entered 08/02/24 11:40:25    Desc Main
Document    Page 4 of 9

Page 4
Debtor:        Eric Madsen
Case No.:      24-11036
Caption of Order: **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)**

access to the Debtor's bank records during this period, was suspicious of the abnormal activity in the Debtor's accounts. [ECF No. 15-3, Ex. C]. But the Debtor's explanation is unchallenged and legitimate.

Mr. Oldja's default judgment was entered against the Debtor by the Passaic County Superior Court on December 28, 2023, in the amount of $38,261 for unpaid rent and related fees. The Debtor testified that his counsel instructed him to stop paying rent until Mr. Oldja fixed a water leak in his apartment. In the State Court litigation, the Debtor testified that he could not afford to pay his attorney, had to continue the case *pro se,* and ultimately suffered a default judgment because he did not comply with discovery requests. [ECF No. 19, pp. 24-25]. Even though the State Court judgment was entered based on a default and the Debtor suggested he had a meritorious defense, the Court accepts Mr. Oldja's claim as valid in all respects for the purposes of this decision.

Despite Debtor's claim that he has been financially overwhelmed by the custody dispute which prevents him from paying his debts, the Debtor has engaged in questionable discretionary spending both pre- and post-petition. Even though he listed monthly entertainment expenses of only $150 on his Schedules, the Debtor's bank statements reveal gambling expenses of $12,865 through FanDuel and DraftKings. Most of these bets were placed in January and February 2024, with most of the February bets being after this bankruptcy case was filed. [ECF No. 18-1, Ex. C]. The record is not clear as to the Debtor's winnings from his gambling activities but counsel for the Debtor suggested that the gambling resulted in a net loss. The Debtor's gambling was a subject of the Debtor's cross-examination by Mr. Oldja's counsel at the hearing for dismissal. Mr. Oldja's counsel accurately stated that there is an expectation that a debtor will "tighten its belt" upon

Page 5
Debtor:          Eric Madsen
Case No.:        24-11036
Caption of Order: **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)**

declaring bankruptcy and asked why the Debtor had not done so. The Debtor replied that he gambled in a desperate attempt to "make something out of nothing." [ECF No. 19, pp. 30-31]. The Debtor characterized the gambling as "stupid" and testified that he has stopped. [*Id.*]. As set forth above, the bank statements support the spike in gambling in January and February 2024. Apparently, the Debtor has not produced his bank statements for the months following February 2024. The only thing the Court can rely on for the period after that is the Debtor's testimony.

The bank statements also reveal $1,935 in expenses for the adult entertainment platform OnlyFans. The Debtor was embarrassed that these expenditures came to light. These payments begin in mid-2020 and continue until February 2024. They are relatively small for the 2 years prior to the filing of this bankruptcy. The Debtor testified that this was a $30 or less per month activity and the bank statements support the testimony. [ECF No. 18-1, Ex. C and ECF No. 19 at pp. 33-34].

After the hearing on May 28, 2024, the parties were given the opportunity to file supplemental pleadings. Both parties have done so.

## DISCUSSION

Mr. Oldja moves for dismissal of this Chapter 7 case pursuant to 11 U.S.C. § 707(a), which authorizes dismissal for "cause." The lack of good faith in filing a bankruptcy petition is cause for dismissal under § 707(a). *Perlin v. Hitachi Capital Am. Corp.,* 497 F.3d 364, 369 (3d Cir. 2007). When the moving party questions a debtor's good faith, the burden shifts to the petitioner to prove good faith. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). But there is no doubt that a Bankruptcy Court should not lightly infer bad faith. *Tamecki,* 229 F.3d at 208. And bad faith dismissals should

Case 24-11036-JKS    Doc 22    Filed 08/02/24    Entered 08/02/24 11:40:25    Desc Main
Document    Page 6 of 9

Page 6
Debtor:         Eric Madsen
Case No.:       24-11036
Caption of Order: **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)**

be "confined carefully and [are] generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Id.* at 207 (*citing In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)).

Courts have developed factors for consideration in the §707(a) good faith analysis. One Bankruptcy Court in the Third Circuit listed the following categories of factors:

1. The debtor's (extravagant) lifestyle and ability to pay.

2. The disproportionate impact that bankruptcy relief would have on one particular creditor, or only a few creditors, as compared to other creditors.

3. Forum shopping or efforts to manipulate the judicial process to thwart the orderly determination of a creditor claim pending in another court.

4. Pre-petition fraudulent conduct to place assets beyond the reach of creditors or less than full and candid disclosure in the bankruptcy process itself.

5. An end result, if bankruptcy relief is permitted, that is perceived to be fundamentally unfair or excessive.

*In re Glunk*, 342 B.R. 717, 734 (Bankr. E.D. Pa. 2006).

In *Perlin,* the Third Circuit held that Congress's adoption of an income/expense test for consumer debtors under § 707(b) of the Code did not exclude the consideration of income/expense factors in connection with a request for dismissal under § 707(a) for bad faith. Thus, a Bankruptcy Court can consider a debtor's substantial income and expenses together with other factors in assessing bad faith. 497 F. 3d at 371. And, in the appropriate case, a Bankruptcy Court has the flexibility and authority to dismiss a case based on any one factor justifying dismissal under § 707(a). *In re Glunk,* 342 B.R. at 735.

Many of the hallmarks of a bad faith case are missing here. The Debtor is a utility worker

Case 24-11036-JKS    Doc 22    Filed 08/02/24    Entered 08/02/24 11:40:25    Desc Main
Document    Page 7 of 9

Page 7
Debtor:           Eric Madsen
Case No.:         24-11036
Caption of Order: **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)**

and his wife is a hairdresser – their lifestyle is not lavish or extravagant. Generally, the Debtor has made full disclosure of his assets and liabilities. And he has responded to document requests from both Mr. Oldja and the United States Trustee. The only valid criticism in this area is that he did not account for his large gambling expenses in January and February of this year. But the Debtor has explained that these expenses were an anomaly and that he has ceased his online gambling activities. There is no allegation against the Debtor that he has transferred assets to third parties to put them out of the reach of his creditors. And Mr. Oldja's claim is not based on fraud, misconduct, or gross negligence. It is a normal landlord-tenant dispute.

The Debtor's financial distress is caused in large part by the ongoing custody battle in State Court. His desire to have some form of custody of his 10-year-old son is understandable and, unfortunately, this requires the payment of legal and other professional fees. Mr. Oldja argued that the Debtor was not paying his attorney fees because his mother's credit card was used to replenish the matrimonial attorney's retainer. The Debtor acknowledged this arrangement but said that he was paying his mother back so that she could pay off the credit card debt incurred for his legal fees. The fact that the mother is providing a financial accommodation to her son by backstopping his matrimonial legal fees is not a sign of bad faith. These fees are the Debtor's obligation and are necessary if he wants legal counsel in his State Court custody dispute.

Mr. Oldja correctly points out that he is by far the largest creditor and that this bankruptcy will have a disproportionate impact on him. This factor, by itself, is normally not enough for a finding of bad faith because there are times when a single financial setback can drive a person into bankruptcy. *See In re Glunk*, 342 B.R. at 736. Here, the Debtor's financial problems are primarily due to *both* Mr. Oldja's judgment and the costs of the custody case in State Court. The Debtor and

Page 8
Debtor:        Eric Madsen
Case No.:      24-11036
Caption of Order: **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)**

his wife have a monthly cash flow deficit of over $1,500 due largely to the anticipated future legal and professional costs. The Debtor will not be able to pay Mr. Oldja's judgment or other unsecured claims while these costs continue. Mr. Oldja contends that the Debtor's custody problems are of his own making. This may or may not be true. But it is not bad faith for the Debtor to want to seek a satisfactory outcome in his child custody case.

Mr. Oldja moves for conversion to Chapter 13 as an alternative to dismissal. Mr. Oldja's motion makes a passing allegation that the Debtor does not pass the "means test" and thus this case should be converted to Chapter 13. [*See* ECF No. 18, p. 7]. But the United States Trustee has stated that *no* presumption of abuse has arisen for this case under 11 U.S.C. § 707(b)(2) which would call for an analysis of the Debtor's means test to see if conversion or dismissal of a Chapter 7 case is warranted. [*See* ECF Docket Entry on March 14, 2024]. And the motion to dismiss is only based on § 707(a) due to the Debtor's alleged bad faith. [ECF No. 7]. As a result, the Court will not consider the means test as a basis for conversion to Chapter 13. Moreover, the Debtor's Schedules I and J show a monthly deficit of ($1,514) with entertainment expenses at $150 per month. The Debtor does not have a surplus at the end of each month to fund Chapter 13 plan payments. Thus, the conversion alternative is not viable.

In conclusion, the Debtor's gambling activities in January and February of this year were significant and troubling. To the extent that he thought that he could gamble his way out of financial trouble, the Debtor exercised poor judgment. With a household monthly deficit of more than $1,500, gambling losses only make matters worse. The Court accepts the Debtor's testimony that he has stopped, and his frequent betting in January and February was "stupid." Without more, poor judgment does not translate to bad faith. Also, the Debtor's estimate of fees and expenses in

Case 24-11036-JKS    Doc 22    Filed 08/02/24    Entered 08/02/24 11:40:25    Desc Main
Document    Page 9 of 9

Page 9
Debtor:        Eric Madsen
Case No.:      24-11036
Caption of Order: **DECISION AND ORDER RE: MOTION BY ALEXANDER OLDJA TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(a)**

the amount of $2,600 per month for his custody dispute, including legal fees, counselling, and mediation, seems reasonable based on the record and the fact that the Debtor's child is just 10 years old. These are extraordinary expenses which are the primary cause of the Debtor's monthly budget deficit. As set forth above, the fact that the Debtor wants to pay these expenses so that he can get a satisfactory outcome in the custody dispute is not a sign of bad faith.

**THEREFORE, IT IS ORDERED:**

1. Mr. Oldja's Motion to Dismiss is denied.